IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | |
|---|---|
| In re:<br><br>LUMINENT MORTGAGE CAPITAL, INC., et al.,<br><br>        Debtors. | Jointly Administered Under<br>Case No. 08-21389-DK |
| ARCO CAPITAL CORPORATION LTD.,<br><br>        Plaintiff,<br><br>        v.<br><br>LUMINENT MORTGAGE CAPITAL, INC.,<br>LUMINENT CAPITAL MANAGEMENT, INC.,<br>MERCURY MORTGAGE FINANCE<br>STATUTORY TRUST, PROSERPINE, LLC,<br>PANTHEON HOLDING COMPANY, INC., MAIA<br>MORTGAGE FINANCE STATUTORY TRUST,<br>SATURN PORTFOLIO MANAGEMENT, INC.,<br>MINERVA MORTGAGE FINANCE CORP.,<br>MINERVA CDO DELAWARE SPV LLC, OT<br>REALTY TRUST,<br><br>        Defendants. | Adv. Pro. No. 08-_____ (DK) |

## COMPLAINT

As and for its complaint, plaintiff Arco Capital Corporation Ltd. ("Arco"), by its counsel McGuireWoods LLP and Clifford Chance US LLP, alleges as follows:

### Summary of Action

1. This is an adversary proceeding for breach of contract and declaratory judgment relating to a DIP financing agreement. The above-captioned defendants (collectively, the "Defendants") breached the agreement by borrowing funds in violation of the express terms of

the agreement.  Arco seeks immediate injunctive relief and damages relating to this breach, and also a declaration that certain events of default that are likely to occur in the near future will entitle Arco to similar relief under the agreement.

## Parties

2. Plaintiff Arco Capital Corporation Ltd. is an international finance company, incorporated in the Cayman Islands, that engages in mid-market commercial, infrastructure and real estate financing and acquisition activities in select emerging markets.

3. Defendant Luminent Mortgage Capital, Inc. ("Luminent") is a corporation organized under the laws of Maryland.  Luminent is an asset management company that is the ultimate parent company of the subsidiary debtors listed below.

4. Defendant Luminent Capital Management, Inc. is a corporation organized under the laws of Delaware and is a wholly-owned subsidiary of Luminent.

5. Defendant Mercury Mortgage Finance Statutory Trust ("Mercury") is a business trust organized under the laws of Maryland and is wholly-owned by Luminent.

6. Defendant Proserpine, LLC is a limited liability company organized under the laws of Pennsylvania and is wholly-owned by Mercury.

7. Defendant Pantheon Holding Company, Inc. ("Pantheon") is a corporation organized under the laws of Delaware and is wholly-owned by Luminent.

8. Defendant Maia Mortgage Finance Statutory Trust is a business trust organized under the laws of Maryland and is wholly-owned by Pantheon.

9. Defendant Saturn Portfolio Management, Inc. is a corporation organized under the laws of Delaware and is wholly-owned by Pantheon.

10. Defendant Minerva Mortgage Finance Corporation ("Minerva") is a corporation organized under the laws of Maryland and is wholly-owned by Pantheon.

11. Defendant Minerva CDO Delaware SPV LLC is a corporation organized under the laws of Delaware and is wholly-owned by Minerva.

12. Defendant OT Realty Trust is a real estate investment trust organized under the laws of Maryland and is a subsidiary of Minerva.

13. Defendants are collectively referred to as the "Borrowers" or the "Debtors."

## Jurisdiction and Venue

14. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).

15. Venue in this District is proper pursuant to 28 U.S.C. §§ 1409(a) and (e) because this is a proceeding arising under Title 11 of the United States Code (the "Bankruptcy Code") or arising in or related to a case under the Bankruptcy Code and because venue would be proper in this District under applicable nonbankruptcy law.

16. The claims alleged herein are core proceedings under 28 U.S.C. §§ 157(b)(2)(A)), (D), (K), (M) and (O).

17. This adversary proceeding is brought in accordance with Rules 7001 *et seq.* of the Federal Rules of Bankruptcy Procedure, and seeks relief under 11 U.S.C. §§ 105(a) and 54, 28 U.S.C. § 2201, and other applicable law.

## Background

18. Each of the Debtors commenced bankruptcy proceedings on September 5, 2008, (the "Petition Date") by filing voluntary petitions for relief pursuant to Chapter 11 of the Bankruptcy Code (collectively, the "Bankruptcy Cases").

19. On the same date, Arco and the Debtors entered a Post-Petition Loan and Security Agreement (the "DIP Agreement"). The DIP Agreement allows the Borrowers to draw up to

$3.242 million in debtor-in-possession financing, consistent with a budget attached to the DIP Agreement, and subject to various conditions, covenants and restrictions.

20. Under Section 2.2 of the DIP Agreement, in order to draw down on the borrowing facility, the Debtors were required to make a written request to Arco specifying the principal amount of the loan requested.

21. Section 3.2 of the DIP Agreement sets forth various conditions precedent to funding. Section 3.2(g) provides that: "The purpose of the Loan shall be consistent with and for purposes permitted under the Budget and the Debtors shall, at the time of the delivery of any loan request pursuant to Section 2.2 hereof, have used for a purpose set forth in the Budget all cash on hand and any cash collateral."

22. Section 3.2 further provides that: "Each Request for a Loan submitted by the Debtors shall be deemed to be a representation and warranty that the conditions specified in this Article III have been satisfied on and as of the date of the applicable Loan."

23. Section 7.1 of the DIP Agreement sets forth the Events of Default. Under Section 7.1(b), an Event of Default occurs if "[a]ny representation, warranty, certification or statement made by any of the Debtors in this Agreement, in any certificate, financial statement or other document delivered pursuant hereto or thereto or in connection with the Loans hereunder proves to have been incorrect or misleading in any material respect when made or delivered."

24. Under Section 7.1(c), an Event of Default occurs if "[t]he Bankruptcy Court fails to enter (i) the Interim DIP Order within five (5) Business Days following the Petition Date, or (ii) the Final DIP Order within thirty (30) days following the Petition Date (unless such dates are extended with the written consent of the Lender) . . . ."

25. Under Section 7.1(f), an Event of Default occurs if "[t]he Bankruptcy Court enters an order . . . converting any of the Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code."

26. Section 7.2(a) of the DIP Agreement sets forth the remedies available to Arco if any Event of Default occurs and is continuing. Among those remedies, Arco may "declare the Commitment terminated, whereupon such Commitment shall be terminated" and "declare the Obligations (together with accrued and unpaid interest and expenses and any other obligations that may be due to the Lender under this Agreement) to be immediately due and payable without presentment, demand, protest or other notice of any kind, all of which are expressly and irrevocably waived by the Debtors."

27. On the Petition Date, the Debtors filed the Motion Of The Debtors And Debtors-in-Possession For Entry Of An Order Pursuant To Sections 105, 363, 364 and 507 Of The Bankruptcy Code And Bankruptcy Rules 2002, 4001 and 9014, (A) Authorizing the Debtors To Obtain Post-Petition Secured Financing On An Interim And A Final Basis, (B) Approving Agreements Relating To The Foregoing, (C) Scheduling A Final Hearing And Prescribing The Form And Manner Of Notice Thereof, and (D) Granting Related Relief (the "DIP Financing Motion").

28. On September 15, 2008, the Bankruptcy Court entered an Interim Order (i) Authorizing the Debtors to Obtain Post-Petition, Secured, Super-Priority Financing, and (ii) Scheduling a Final Hearing (the "Interim Order").

29. Paragraph 10 of the Interim Order states that an Event of Default under the DIP Agreement shall be an Event of Default under the Interim Order.

30. Paragraph 11 of the Interim Order states: "If any Event of Default occurs and is continuing, the Lender may take any or all of the following actions without further order of or application to the Bankruptcy Court: (i) declare the commitment terminated, and (ii) declare the DIP Obligations (together with accrued and unpaid interest and expenses and any other obligations that may be due to the Lender under this DIP Agreement) to be immediately due and payable without presentment, demand, protest or other notice of any kind, all of which are expressly and irrevocably waived by the Debtors . . . ."

31. On September 29, 2008, the Debtors made a written e-mail request for a $200,000 loan under the DIP Agreement (the "September 29 Loan Request"). Based on this written request, Arco wired $200,000 to the Debtors on the same day.

32. Arco subsequently became aware that the Debtors had substantial cash on hand when the loan request was made. By e-mail dated September 29, 2008, Zachary Pashel, the President and CEO of Luminent informed Arco that the Debtors had approximately $200,000 in cash on hand, excluding the funds provided pursuant to the September 29 Loan Request.

33. Under the DIP Agreement, by making the September 29 Loan Request, the Debtors represented and warranted that the Debtors "have used for a purpose set forth in the Budget all cash on hand and all cash collateral." This representation and warranty was incorrect and misleading because the Debtors had approximately $200,000 in cash on hand. Under Section 7.1(b) of the DIP Agreement and Paragraph 10 of the Interim Order, this was an Event of Default.

34. The Bankruptcy Court held a hearing on September 29, 2008 to consider the relief sought in the DIP Financing Motion on a final basis. After hearing objections, the Bankruptcy Court entered an Order dated September 29, 2008 denying the DIP Financing Motion. If the

Bankruptcy Court does not enter an order granting the relief sought by the DIP Financing Motion on a final basis by October 6, 2008, this would be an Event of Default under Section 7.1(e) of the DIP Agreement and Paragraph 10 of the Interim Order.

35. On October 3, 2008, the Debtors advised Arco of the Debtors' intent to convert the Bankruptcy Cases to cases under Chapter 7 of the Bankruptcy Code. If the Bankruptcy Court enters an order converting any of the Bankruptcy Cases to cases under Chapter 7, this would be an Event of Default under Section 7.1(f) of the DIP Agreement and Paragraph 10 of the Interim Order.

36. On the same date, Arco made a written request to the Debtors for immediate repayment of the $200,000 loan made on September 29, 2008. The Debtors have not complied with this request and, on information and belief, still hold the $200,000 as cash on hand.

### Claim One
**(Breach of DIP Agreement)**

37. Arco repeats and realleges the averments in paragraphs 1 through 36 as if fully stated herein.

38. By making the September 29 Loan Request when the Debtors had substantial cash on hand, the Debtors breached the DIP Agreement.

39. As a direct and proximate result of this breach, Arco transferred $200,000 to the Debtors and, despite a written demand, the Debtors have failed to return that sum to Arco pursuant to the terms of the DIP Agreement. Accordingly, Arco has suffered damages of at least $200,000.

### Claim Two
**(Declaratory Judgment)**

40. Arco repeats and realleges the averments in paragraphs 1 through 36 as if fully stated herein.

7

41.     Under the DIP Agreement and the Interim Order, an Event of Default will occur (i) if the Bankruptcy Court does not enter an order approving the DIP Agreement and authorizing the financing contemplated by the DIP Agreement on a final basis by October 6, 2008 and/or (ii) if the Bankruptcy Court enters an order converting any of the Bankruptcy Cases to cases under Chapter 7 of the Bankruptcy Code.

42.     Under the DIP Agreement and the Interim Order, if an Event of Default occurs, Arco is entitled to declare any outstanding loans under the DIP Agreement to be immediately due and payable without presentment, demand, protest or other notice of any kind.

43.     Accordingly, pursuant to 28 U.S.C. § 2201, Arco is entitled to a judgment declaring that if (i) the Bankruptcy Court does not enter an order approving the DIP Agreement and authorizing the financing contemplated by the DIP Agreement on a final basis by October 6, 2008 or (ii) the Bankruptcy Court converts any of the cases to cases under Chapter 7 of the Bankruptcy Code, then an Event of Default will have occurred and all amounts loaned under the DIP Agreement shall be immediately due and payable by the Debtors.

WHEREFORE, Arco prays for the following relief:

(a)     A temporary restraining order and/or preliminary injunction to preserve the *status quo* by preventing the Defendants from transferring or otherwise using or disposing of the $200,000 loan or any portion thereof;

(b)     A judgment that the Debtors breached the DIP Agreement and an award of damages in an amount to be determined at trial, but not less than $200,000;

(c)     A declaratory judgment declaring that if (i) the Bankruptcy Court does not enter an order approving the DIP Agreement and authorizing the financing contemplated by the DIP Agreement on a final basis by October 6, 2008 or (ii) the Bankruptcy Court converts any of the

cases to cases under Chapter 7 of the Bankruptcy Code, then an Event of Default will have occurred and all amounts loaned under the DIP Agreement shall be immediately due and payable by the Debtors;

 (d) An order awarding Arco the costs and expenses of this action; and

 (e) Such other relief as the Court may deem just and proper.

Dated: October 6, 2008

  ARCO CAPITAL CORPORATION LTD.

  By:  /s/ Dion W. Hayes
  Dion W. Hayes, Esq. (MD Fed. Bar No. 14685)
  Joseph S. Sheerin, Esq.
  McGuireWoods LLP
  One James Center
  901 East Cary Street
  Richmond, VA 23219
  Telephone: (804) 775-1000
  Facsimile: (804) 775-1061
  Email address:
  DHayes@mcguirewoods.com
  JSheerin@mcguirewoods.com

  -and-

  Andrew P. Brozman, Esq.
  Jennifer C. DeMarco, Esq.
  Jeff E. Butler, Esq.
  CLIFFORD CHANCE US LLP
  31 West 52nd Street
  New York, NY 10019
  Telephone: (212) 878-8000
  Facsimile: (212) 878-8375

  *Attorneys for Arco Capital Corporation Ltd.*